UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN M. DODSON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1272 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Kevin Dodson brings this action under 42 U.S.C. §1383 seeking judicial review of the Commissioner's final decision denying his claims for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

## **Procedural History**

On September 3, 2015, the Social Security Administration denied Dodson's June 2015 application for SSI, in which he claimed he became disabled on January 1, 2012, because of his lower lumbar pain with radiation to the right lower extremity, a bulging disc, and difficulty sleeping due to pain. Dodson requested a

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

hearing and the hearing was held before an administrative law judge (ALJ) on April 18, 2017, at which Dodson and a vocational expert testified. On May 22, 2017, the ALJ denied Dodson's claims for benefits, finding the vocational expert's testimony to support a finding that Dodson could perform work as it exists in significant numbers in the national economy. On February 15, 2018, the Appeals Council denied Dodson's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

Dodson contends that the ALJ erred in his consideration of Dodson's impairments because the ALJ failed to obtain a consultative medical examination and fully develop the record. Dodson also claims that the ALJ's finding that he can perform the light exertional job of assembler is erroneous because this job exceeds the maximum residual functional capacity (RFC) of a sedentary capacity. For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Dodson's recitation of facts set forth in his Statement of Uncontroverted Facts and note that they are admitted by the Commissioner. (ECF 12-1; ECF 17). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Facts and note they are admitted by Dodson. (ECF 17-2; ECF 19). Together, these statements provide a fair and accurate description of the relevant record before the

Court. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for SSI under the Social Security Act, Dodson must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to

3

whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations and determine whether the claimant is able to perform his past relevant work. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has non-exertional impairments, such as pain or postural limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *Pearsall*, 274 F.3d at 1219.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.  The ALJ's Decision

The ALJ found that Dodson met the requirements of the Social Security Act through December 31, 2019, and that he had not engaged in substantial gainful activity since June 25, 2015. The ALJ found that Dodson's lower lumbar pain radiating to the right lower extremity and a bulging disc in the lower back were

5

severe impairments. Overall, the ALJ found that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). The ALJ found that Dodson had the RFC to perform sedentary work with some limitations, specifically that he could:

> perform sedentary work as defined in 20 CFR 416.967(a) except he can only occasionally climb ramps or stairs, stoop, kneel or crouch. He can never climb ladders, ropes or scaffolds. He must avoid working in unprotected heights or using dangerous machinery, exposure to whole-body vibration, and concentrated exposure to extreme cold.

(Tr. 23). The ALJ determined that this RFC prevented Dodson from performing his past relevant work as a cook, cashier, and dishwasher at fast food restaurants. (Tr. 29).

Considering Dodson's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Dodson could perform work as it exists in significant numbers in the national economy, and specifically as an assembler and stringing-machine tender. (Tr. 29-30). Therefore, the ALJ found Dodson not to be disabled. (Tr. 30).

C.  RFC Assessment

At the third step of the sequential evaluation process, the ALJ determined that Dodson's impairments did not meet the listed impairments as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ then moved onto step four, the RFC analysis, and found that Dodson has the RFC to perform sedentary work. Plaintiff

6

argues that the ALJ erred in failing to make a determination as to Listing 1.04(A) (disorders of the spine) because the ALJ failed to obtain a consultative medical examination to determine if Dodson met Listing 1.04.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden of proving an impairment lies with the claimant "and to meet a listing, an impairment must all of the listing's specific criteria." *Carlson v. Astrue*, 604 F.3d 589, 593

7

(8th Cir. 2010). A mere diagnosis of a condition stated in the listing and meeting some of the criteria will not qualify the claimant for a disability under the listing. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

In order to establish the listed spinal disorder impairments, a claimant must have a disorder of the spine that compromises either the nerve root or spinal cord, and must meet the specific symptoms and requirements under 20 C.F.R. Pt. 404, Subpt. P, App., § 1.04(A), (B), or (C). The requirements of § 1.04(A) are evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)with sensory or reflex loss, and for lower back issues a positive straight-leg raising test (sitting and supine).

A review of Dodson's symptoms supports the ALJ determination that he did not meet the listed criteria in § 1.04(A). For purposes of social security analysis, a "symptom"[2] is an individual's own description or statement of her physical or

---

[2] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

8

mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id*. at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

Here, the ALJ concluded that Dodson failed to present sufficient evidence to satisfy the required listing criteria. (Tr. 22). The ALJ considered the objective medical evidence, evaluated Dodson's statements of symptoms, and assessed his

9

RFC. The ALJ addressed *Polaski* factors and made specific findings that Dodson's claimed symptoms were inconsistent with the record. Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ reviewed the objective medical record in assessing if Dodson met the listing requirements of § 1.04(A). The medical evidence demonstrates that Dodson did not have limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, nor did he have a positive straight leg raising test.[3] (Tr. 24-29, 309, 367, 371, 384, 385, 376-77, 402). His physical findings were normal, with moderate pain at times. (Tr. 24-29, 309, 367, 371, 376-77, 392, 402). The records do not reveal that Dodson's treating physicians offered an opinion that he met a medically listed impairment. (Tr. 26-27, 278, 288, 309, 367, 371, 392). The MRI only showed mild degeneration at L4-5 and L5-S1 with some severe right and moderate left latent stenosis. (Tr. 25, 349). He was prescribed ibuprofen for pain and advised to attend physical therapy. (Tr. 25, 52, 312). Moreover, his exams during the preceding twelve months of his disability claim document that his back was normal – with normal posture, gait, strength, sensation. The lumbosacral

---

[3] Dodson's statement of facts incorrectly states that he had "positive straight leg raise testing." ECF doc. #12-1 at p.2, ¶ 2. But the doctor's record he cites (Tr. 312) found his lumbosacral spine examination to be normal except for "Double Straight Leg Lowering Test Positive – 4/5." Tr. 312. He was prescribed core ab strengthening and stretching. This does not show compromise of the spine.

10

spine movements were normal and a straight leg *lowering* test showed 4/5 muscle strength. (Tr. 309, 371, 376-77). The ALJ's conclusion that Dodson dos not meet the requirements of Listing § 1.04(A) is supported by the objective medical evidence. *See Ruble v. Colvin,* No. 1:15 CV 141 JMB, 2016 WL 5236806, at *17 (E.D. Mo. Sept. 22, 2016) (affirming the decision of the ALJ that the claimant did not meet the listing requirements when the medical evidence demonstrated that the listing criteria were not met).

The ALJ also reviewed Dodson's subjective complaints and noted that his complaints were not consistent with the medical evidence and other evidence in the record. (Tr. 24). Dodson claimed that his pain severely limited his daily activities and ability to work (Tr. 50-54, 376). The ALJ considered these statements and noted that the objective medical evidence did not show a worsening of his condition. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (lack of worsening of condition over a period of years detracts from disability claim). Further, Dodson had several visits where he did not report back pain. (Tr. 26-27, 392, 402). A lack of objective medical evidence may allow a claimant's subjective complaints to be discounted when there are inconsistencies in the records as a whole. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).

While Dodson argues that the ALJ erred in not obtaining a consultative examination to determine if met Listing § 1.04(A), substantial evidence supports

the ALJ's decision not to obtain one. A consultative medical exam is necessary only if the medical records are insufficient to determine a disability. *McCoy*, 648 F.3d at 612. The record was sufficiently developed because of the numerous physical examinations of Dodson's back impairment that were present in the record before the ALJ, thus this issue was fully developed. *Swink v. Saul*, No. 18-1850, 2019 WL 3402477, at *3 (8th Cir. July 29, 2019) (An ALJ may issue a decision without obtaining medical evidence as long as the record provides a sufficient basis for doing so). Moreover, Dodson's reliance upon *Windle v. Berryhill* is misplaced because in that case the ALJ failed to obtain medical evidence from the claimant's emergency room visit and one of the doctors expressly stated that these additional records would inform the claimant's work-related limitations. No. 4:17 CV 1919 RWS, 2018 WL 3025815, at *3 (E.D. Mo. June 18, 2018). This case is distinguishable because there is no indication of missing evidence nor have any of Dodson's treatment providers opined on his work-related limitations.

Accordingly, in a manner consistent with and as required by *Polaski*, the ALJ evaluated Dodson's statements of symptoms on the basis of the entire record and articulated specific reasons in finding that Dodson's symptoms did not meet the listing criteria of § 1.04(A). Because this determination is supported by good reasons and substantial evidence, I must defer to it. *Julin*, 826 F.3d at 1086.

The ALJ thoroughly discussed specific medical facts as well as the nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole, and assessed Dodson's RFC based on the relevant, credible evidence of record. Because the RFC is supported by some medical evidence, it will not be disturbed. *See Baldwin v. Barnhart,* 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

D. <u>Vocational Expert Testimony</u>

Dodson argues that substantial evidence does not support the ALJ's step five finding because the ALJ concluded that he could perform the work of an assembler, which is a job that exceeds that the maximum RFC of sedentary exertional capacity. A hypothetical question is properly asked if it includes impairments that are supported by substantial evidence in the record and accepted by the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). When an ALJ poses a hypothetical question to a vocational expert, the question "need only include impairments that the ALJ finds credible." *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014). If a hypothetical is properly asked, then the testimony of the vocational expert is considered substantial evidence. *Dow v. Colvin*, 174 F. Supp. 3d 1074, 1079 (E.D. Mo. 2016) (internal citations omitted).

Here, the hypothetical questions included Dodson's limitations that the ALJ found comprised his RFC. The vocational expert testified that one with those limitations could perform work, including a sedentary table worker and sedentary machine tender. (Tr. 80-81). Therefore, the hypothetical question was proper and the vocational expert's answer constituted substantial evidence supporting the Commissioner's denial of his disability claim. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) ("An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity.")

While the ALJ's decision incorrectly used the wrong job number for the assembler job function, the vocational expert correctly identified that Dodson could perform another sedentary job of a stringing-machine tender. This discrepancy is harmless because the vocational expert stated Dodson could perform other jobs available in the economy that matched his RFC of sedentary work and the sedentary job available included Dodson's limitations as discussed by the ALJ. *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (an ALJ's use of vocational expert testimony is supported by substantial evidence as long as there is no conflict between the testimony and the dictionary of occupation titles).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Dodson was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Kevin Dodson's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of September, 2019.